```
 1                    IN THE UNITED STATES DISTRICT COURT
                       MIDDLE DISTRICT OF NORTH CAROLINA
 2

 3  UNITED STATES OF AMERICA          ) Greensboro, North Carolina
                                      ) April 12, 2019
 4      vs.                           ) 10:18 a.m.
                                      )
 5  LEE MARVIN HARRIS,                )
                                      ) Case No. 1:18CR249-2
 6      Defendant.                    )
    _____)
 7

 8                        TRANSCRIPT OF SENTENCING
               BEFORE THE HONORABLE WILLIAM L. OSTEEN, JR.
 9                    UNITED STATES DISTRICT JUDGE

10  APPEARANCES:

11  For the Government:   RANDALL GALYON, AUSA
                          Office of the U.S. Attorney
12                        251 N. Main Street, Suite 726
                          Winston-Salem, North Carolina 27101
13

14  For the Defendant:    PETER D. ZELLMER
                          Peter D. Zellmer, PLLC
15                        421 N. Edgeworth St.
                          Greensboro, NC 27401
16

17

18

19

20

21

22  Court Reporter:    Joseph B. Armstrong, FCRR
                       324 W. Market, Room 101
23                     Greensboro, NC  27401

24            Proceedings reported by stenotype reporter.
          Transcript produced by Computer-Aided Transcription.
25
```

Sentencing - April 12, 2019

                    P R O C E E D I N G S

          (At 10:18 a.m., proceedings commence.)

          (Defendant present.)

          **MR. GALYON:**  Your Honor, the next matter is United
States of America versus Lee Marvin Harris, Jr., 1:18CR249-2.
He's represented by Peter Zellmer.  The matter is on related to
sentencing.

          **THE COURT:**  All right.  I continued this matter
because I had two concerns in the case with respect to the
position of Mr. Harris.  No. 1, the firearm, and predominantly
the -- or to summarize it succinctly, what I viewed as
inconsistent positions with respect to the plea agreement,
which stipulated to forfeiture of the firearm and an objection
to application of the plus two in the presentence report.

          And, generally speaking, the facts are that the
firearm was found on a shelf in a box in the closet of the
bedroom that the defendant was using at the time he was
involved in distribution of controlled substances.  Those
controlled substances, it appears from the facts, being stored
in a Cadillac that was parked outside the home and parked.  It
didn't appear to be operational or it was remaining outside.

          So for two reasons, one, I thought it was a close
call as to whether -- or could be admittedly a close call as to
whether or not the plus two should apply, but to the extent it
was a close call in light of the Government's -- the

defendant's stipulation to forfeiture of that firearm, at least

in my mind, that fact moved the application of that adjustment

to a different category.

I was also concerned, as I indicated at some length,

with Mr. Harris's claim that he was not in a gang in his

efforts to -- what I perceived, to minimize his criminal

conduct in that it appears, regardless of the origins of this

DBC group, that at least a number of those individuals were

involved in the distribution of controlled substances, both at

New York Avenue as well as other places.  And it seemed to me

applying whatever definition of gang or security threat group

would apply, that denying that the defendant is a member of a

gang of some description, security threat group, whatever you

want to call it, also substantially minimized the defendant's

criminal conduct.

Acceptance of responsibility under Chapter 3, as an

initial step, 3E1.1(a) asked if the defendant clearly -- or

states if the defendant clearly demonstrates acceptance of

responsibility for his offense, decrease the offense level by

two levels.  In the application notes, there are a number of

factors the Court can take into consideration.

Application note 1(a) involves truthfully admitting

the conduct comprising the offense of conviction, which I

think, by entering a guilty plea, the defendant has done here.

And truthfully admitting or not falsely denying any additional

relevant conduct for which the defendant is accountable under
Section 1B1.3.  A defendant is not required to volunteer or
affirmatively admit relevant conduct beyond the offense of
conviction, and the defendant may remain silent in respect to
relevant conduct beyond the offense of conviction, et cetera,
et cetera.

It goes on to say, a defendant who falsely denies or
frivolously contests relevant conduct that the Court determines
to be true has acted in a manner inconsistent with acceptance
of responsibility, but the fact that the defendant's challenge
is unsuccessful does not necessarily establish that it was
either a false denial or frivolous.

I think here, particularly with respect to the gun,
that's what troubles me the most.  So Mr. Zellmer, we'll pick
up where we left off.  Do you want to be heard on this?

**MR. ZELLMER:**  Your Honor, as far as the forfeiture,
and perhaps this was my error in my legal advice to him, my
reading of the forfeiture surrender provision -- and I'll say I
have consulted with several other attorneys, and this was their
interpretation as well -- was that that provision in that plea
agreement was not an acknowledgment of a possessory or
ownership interest, but rather simply saying that there is no
objection to a forfeiture.  And if someone lacks any possessory
or ownership interest in an object, then by virtue of that fact
they have no legal standing --

Case 1:18-cr-00249-WO   Document 149   Filed 04/29/20   Page 4 of 27

1      **THE COURT:**  What did these attorneys say about an

2  affirmative representation that the firearm was -- either

3  facilitated the commission of or used in the commission of the

4  offense?

5      **MR. ZELLMER:**  It was their position, it was certainly

6  my position as well upon reading it and advising my client,

7  that that -- that clause in the plea agreement did not imply

8  that he had a possessory interest, but rather that he was not

9  objecting --

10      **THE COURT:**  I'm just asking.  Does that

11  representation suggest that the firearm was used in the

12  commission of the offense or facilitated the commission of the

13  offense, in your opinion?

14      **MR. ZELLMER:**  In my opinion, it is simply a lack of

15  objection to forfeiture.  I can go back and look at the

16  language again, and if I made an error, I apologize.  If my

17  legal interpretation was wrong, I apologize, but certainly that

18  was my legal representation upon reading --

19      **THE COURT:**  All right.  Pull up the facilitation

20  provision in the plea agreement.  I'll read it.

21      **MR. ZELLMER:**  Yeah, I appreciate that, Your Honor.

22  I'm having a hard time locating it.

23      **THE COURT:**  Pursuant to 21 -- let's see, the

24  defendant, Lee Marvin Harris, knowingly and voluntarily

25  consents and agrees to forfeit to the United States, pursuant

```
1   to 21 USC Section 853 any property used or intended to be used
2   in any manner or part to commit or to facilitate the commission
3   of the offense in Count Seven.  The specific property to be
4   forfeited includes, but is not limited to, a Springfield .40
5   caliber handgun.
6           So with respect to that specific phrase, "property
7   used or intended to be used in any manner or part to commit or
8   facilitate the commission of the offense in Count Seven," does
9   that affirmatively represent that that firearm was used or
10  intended to be used to facilitate the offense in Count Seven,
11  in your analysis?
12          MR. ZELLMER:  Certainly my analysis at the time of
13  advising my client.
14          THE COURT:  Right now.  I don't care about what you
15  told your client.
16          MR. ZELLMER:  After -- after hearing Your Honor's
17  persuasive argument, I can see --
18          THE COURT:  So then the second question becomes who
19  used it to facilitate the offense?  Was it his father?
20          MR. ZELLMER:  Your Honor, my -- my -- I have always
21  been -- the facts that have been given to me by all the people
22  are the ones that I presented to you.
23          THE COURT:  Understood.
24          MR. ZELLMER:  My advice to my client in signing that
25  is that he was giving up any interest that he had, which was
```

Case 1:18-cr-00249-WO   Document 149   Filed 04/29/20   Page 6 of 27

none, and thus it was immaterial.  Certainly I understand Your
Honor's interpretation, and I think that sounds like a valid
interpretation, and if that is a valid interpretation, then I
have clearly given my client bad advice, and for that I am
very, very sorry.

        **THE COURT:**  If it is, what's another good
interpretation of it?  If that's a valid -- what is a good
interpretation?

        **MR. ZELLMER:**  That he is not going to contest any
forfeiture of the weapon or object to any forfeiture of any
other property that was seized and not wage any objections to
any seizures or forfeitures.

        **THE COURT:**  All right.  Mr. Galyon, do you want to be
heard on this?

        **MR. GALYON:**  No, Your Honor.

        **THE COURT:**  I mean, do you -- does the Government
think he deserves acceptance?

        **MR. GALYON:**  Your Honor, I think that the question of
whether or not he falsely denied or frivolously contested, I
think is -- in the same way that the plus two is a close
question, I think that the issue of the acceptance is a close
question because I don't -- I don't doubt that at the time that
Mr. Harris entered the plea that he believed that he was --
that he admitted to the conduct, that is, that he admitted that
he had been involved in drug activity, and that the question of

Case 1:18-cr-00249-WO   Document 149   Filed 04/29/20   Page 7 of 27

1  the forfeiture of the firearm and his possession of the firearm
2  was probably an ancillary position, an ancillary concern.
3          And so, as to the acceptance, I don't think that he's
4  falsely -- that he is falsely denying as to the firearm.  I
5  think it's -- I think it's a close question, but I think he
6  probably is not, and so as to the question of acceptance, you
7  know, as we stand, especially because he withdrew the
8  objection.  As the Court recalls, he --
9          **THE COURT:**  I do.
10         **MR. GALYON:**  After the Court had put to Mr. Zellmer
11  the issue of the forfeiture provision and how that was
12  inconsistent, that he and -- that Mr. Zellmer and his client
13  had an opportunity to discuss that and that they withdrew the
14  objection, and for that reason, I think that that is indicative
15  of the fact that he is not falsely denying his involvement in
16  the conduct.
17         **THE COURT:**  All right.  You can have a seat,
18  Mr. Zellmer.  I want to be clear on this.  Absent the
19  forfeiture provision, take that out for just a moment, I think
20  it would be a close issue on the plus two.  Evidence could go
21  either way.  Forget about what the father said for just a
22  moment.  The evidence could go either way.  It's a judgment
23  call.  No problem with the challenge, at least in my mind in
24  terms of acceptance.  I think that's the type of thing that
25  acceptance of responsibility, the application notes, are

intended to encompass; no frivolous challenge, and it wouldn't be a frivolous challenge.

Second, there's -- in my mind I can completely understand taking a position of I don't care about the gun so, fine, forfeit the firearm, because it doesn't matter. I understand that position, but the defendant did more than that in the plea agreement. The defendant affirmatively represented that this property was, in fact, subject to forfeiture because it was used or intended to be used in the commission of the offense or to facilitate the offense.

Even then step No. 2 of that, that then begins to trouble me, because I don't know any other way to read this provision. I don't care what some lawyers say in this district about a forfeiture provision not implicating any type of possessory or ownership interest. I don't know how you forfeit someone else's property. It's just beyond my comprehension that somebody could say, oh, well, it's not my property, so I'll just agree to forfeit it, and I'll not make any note of that.

Anyway, No. 3, the affirmative presentation of Mr. Harris's father's testimony to suggest to the Court that this firearm was somehow inadvertently left in a closet years ago, and to suggest or imply that nobody knew about it after the forfeiture provision has been signed, that is -- that sequence of events, true or not, is really troubling to me in

1  terms of acceptance of responsibility.

2          That whole sequence is I'm not responsible for what I

3  say, I'm talking about Mr. Harris now, not about counsel.  I'm

4  not responsible for what I say in my plea agreement.  I just

5  don't care enough about it to be accurate, but if what I say in

6  my plea agreement comes back to cause issues later with respect

7  to I don't want the plus two for the gun so let's object to it

8  because the Government can't prove it, after I've stipulated to

9  that, that is very troubling.

10          This issue doesn't come up often.  It's only recently

11  that we've begun to see forfeiture provisions, specifically

12  relating to firearms, in plea agreements.  Mr. Galyon, I can't

13  remember that beyond about a year or two ago.  So it's a new --

14  we'll call it a new clause, but new or not, it is a clause that

15  has some meaning, and it's a representation to the Court that

16  certain facts exist.  One, that the defendant has a sufficient

17  interest to forfeit the property to the Government, and, two,

18  that the property was used or intended to be used to commit or

19  facilitate the commission of the offense.  And it is beyond my

20  comprehension that a defendant could come in and stipulate to

21  that and then turn around and say, no, I didn't possess the gun

22  during the course of this offense as set out in 2D1.1.

23          So I am going to give Mr. Harris all manner of

24  benefit of doubt here for withdrawing the plus two -- for

25  withdrawing the objection to the plus two, after the

Sentencing - April 12, 2019

inconsistency was pointed out, and I'm going to leave

acceptance of responsibility in tact.  But in terms of

fashioning a sentence, both sides should be aware of the fact

that I am, as I've made clear, No. 1, very concerned about a

defendant who would take -- what I perceive to be inconsistent

positions in federal court in order to gain an advantage in the

sentencing process.

        And, No. 2, I'm not going to obviously remove

acceptance for this gang issue, but it's another thing that

troubles me.  It may very well be, and I'll credit Mr. Harris's

father's commentary about a group of individuals in the

neighborhood who grew up together, and they all love Cadillacs,

but the conduct that I see here, and the definition that I see

of security threat group or gang or whatever you want to call

it, and the photographs that have been presented, give me a

tremendous concern.  And an individual who thinks that they can

come into court and deny what appears to be otherwise obvious

based on the facts presented, that's very troubling.

        But, in any event, I'll hear from the parties with

respect to -- I'll make my findings.  I guess I better go back.

So what do we have in the way of objections?  Plus two for the

firearm was the only objection to the presentence report, other

than the facts with respect to the gang membership?  Is that

correct?  I've adjusted the drug quantity.  That was the other

one.

Sentencing - April 12, 2019

1      **MR. ZELLMER:**  Yes, that was also resolved, Your

2  Honor.

3      **MR. GALYON:**  Yes, Your Honor.

4      **THE COURT:**  Then where does that leave us,

5  Ms. Martin, in terms of guideline calculation?

6      **MS. MARTIN:**  Your Honor, the total offense level is a

7  25.  The criminal history category is a III.  That's a

8  guideline imprisonment range of 70 to 87 months.  Supervised

9  release will remain the same at six years, and a fine range is

10  20,000 to 2 million.

11      **THE COURT:**  All right.  All right.  Then I will adopt

12  the presentence investigation report with the following change,

13  and that is with respect to calculation of the guideline range.

14  The relevant drug quantity the Court adopts is that amount

15  stipulated to, which I think -- 100 to 400 kilograms converted

16  drug weight.  The offense of conviction does not carry a

17  mandatory minimum sentence.  The resulting advisory guideline

18  calculation is as follows:

19          A total offense level of 25.

20          A criminal history category of III.

21          A guideline imprisonment range of 70 to 87 months.

22          A supervised release range of six years to life, six

23  years under the guideline calculation.

24          A fine range of 20,000 to $2 million.

25          And a special assessment of $100 is mandatory.

1          Will there be any additional evidence, Mr. Zellmer?

2          **MR. ZELLMER:**  Your Honor, only the presentation that

3     I made regarding the 3553 factors.  He is a 33 year old father

4     of two, numerous character reference letters that were

5     submitted to the Court, that he is a kind and generous

6     individual who helps out frequently in his community, that he

7     appears -- a very high number of -- a large number of people

8     within the community say that he frequently helps out feeding

9     individuals, providing food and other things to help raise

10    money for children in the community, that he is a kind and

11    generous individual.

12         And to that extent, I think that's particularly

13    relevant regarding the probability for rehabilitation, and

14    specifically how that goes toward this question of what

15    sentence is necessary -- is sufficient but not more than

16    necessary in order to achieve the goals of sentencing set out

17    in 3553.

18         I know I've repeated myself a bit, and I certainly

19    don't want to waste the Court's time.  I've made that

20    presentation, I hope, effectively in my sentencing memo.  The

21    net effect of that that I'd like to present to the Court is

22    that everyone who has spoken to me, and many people have, have

23    described Mr. Harris as a kind and generous individual, and I

24    think that bodes very well for the probabilities that he

25    will -- that he is suitable for rehabilitation, that with

Case 1:18-cr-00249-WO   Document 149   Filed 04/29/20   Page 13 of 27

1    proper rehabilitation that there should not be any further

2    danger to the community.

3          There is a need for both substance abuse treatment

4    because of his alcohol abuse in particular it appears to me,

5    but also in terms of vocational treatment -- sorry, not

6    treatment, but vocational training.

7          Your Honor, for all these reasons, I present to the

8    Court and submit to the Court that a punishment of 36 months, I

9    submit, would be sufficient in order to achieve those goals set

10   out in 3553.

11         **THE COURT:**  Let me ask this question, Mr. Zellmer, in

12   terms of the history and characteristics of the defendant and

13   the nature and circumstances of the offense.  I have a lot of

14   defendants who appear before me who come from, we'll say, best

15   case scenario, broken homes, no family support, you know,

16   living on the street day to day, that type of thing.  And I

17   hear the arguments of, well, you know, no family support, that

18   mitigates because that was -- made things very difficult.

19         Then I have somebody like Mr. Harris who it appears

20   to me comes from a wonderful family, long-term military service

21   in the father.  He's a preacher.  I think mom may be --

22         **MR. ZELLMER:**  Mom is a school teacher, Your Honor.

23         **THE COURT:**  School teacher, school teacher.  So, you

24   know, fine people.  Then I look at what Mr. Harris has done

25   with the opportunity that he had -- has had with the family

like that and, in effect, he's risen to the -- up in terms of leadership, I know he didn't get a role -- I don't think he got a role adjustment.

**MR. ZELLMER:** No, Your Honor, there is no role adjustment.

**THE COURT:** Okay. In terms of supplier to a group of individuals who are selling controlled substances, and that concerns me. It's almost as though -- I phrased the question that way because Mr. Harris took advantage of the great opportunity that he had, and the wonderful circumstances that he had, to become more involved in criminal conduct rather than less involved in criminal conduct. How does that factor in? You may disagree with me on that analysis, and I certainly would understand that, but how does that factor in?

**MR. ZELLMER:** Well, certainly all the facts that I have seen in my involvement in this case is, in fact, that he comes from a very kind, loving, and supportive family; not only his parents, but also his siblings. I don't think there's any doubt about that, that these are, as you say, fine people.

I would submit to the Court that the way that I perceive the factoring in is that this support network is there and can aid him into proper reintegration into society, proper reintegration into the community, help support him in making a legitimate life for himself going forward, and that that, along with these personal characteristics that have been described,

Case 1:18-cr-00249-WO  Document 149  Filed 04/29/20  Page 15 of 27

not just by the family, to be fair, but also by a number of
other people not related to him, that those all together give
us very good hope, and that that is good news for the future
and for his probabilities for success upon reintegration into
the community.

**THE COURT:** All right. Mr. Galyon, does the
Government wish to be heard?

**MR. GALYON:** Just briefly. Judge, when we talk about
the nature and circumstances of the offense, obviously this is
a defendant who was using a number of different places in order
to carry out the conspiracy, not only his parents' home and the
vehicle present there at the residence in order to stash drugs,
but also the fact that he used a storage unit in his
girlfriend's name in order to store drugs there as well, used
the abandoned house on New York in order to distribute drugs at
that location for a long period of time, not just a week or
two, but over more than a year, according to the investigation.

And that as part of that he used multiple vehicles
while he was engaged in that activity, and then, of course,
when we get to February of last year, that during the course of
the investigation, when the officers located that Venza there
at Indiana Avenue where a search was conducted, that in that
vehicle was $4400 in cash and over 200 grams of cocaine
hydrochloride.

So those -- those are certainly important related to

the nature and circumstances of the offense in that this is not
a one off.  This is not an individual who just happens to get
involved for a short period of time, and I think that that's
important in the context of the history and characteristics of
this defendant, because when you look at his criminal history,
it's continued over a period of time.  He's not a 20-year-old
person.  I mean, he's older and has been involved in criminal
activity.

          **THE COURT:**  Thirty-three.

          **MR. GALYON:**  And that -- and, you know, most recently
he had the conviction in 2016 related to the felony possession
of cocaine, which was reduced from possession with intent to
sell and deliver cocaine as part of that case.

          And I would argue that that's simply an inference --
or that there is an inference there that he is continuing to
escalate his activity in terms of drug involvement, and that
that's a real concern, because when we talk about protecting
the public, when we talk about providing deterrence and just
punishment, that those factors are certainly important -- just
as important as the nature and circumstances of the offense,
and that this defendant has -- as the Court said, he's been the
supplier for that group, and that that's a real concern, so I
would ask that you fashion a sentence accordingly.  Thank you,
Your Honor.

          **THE COURT:**  All right.  Mr. Harris, you're not

Case 1:18-cr-00249-WO   Document 149   Filed 04/29/20   Page 17 of 27

1   required to say anything.  If you choose to remain silent, your
2   silence will not be held against you in any way whatsoever, but
3   you do have the right to address the Court before any sentence
4   is imposed; and if you wish to address the Court, now is the
5   appropriate time.
6          **THE DEFENDANT:**  Thank you, Your Honor.  First, I
7   would like to apologize to my family.  I have made some
8   mistakes.  I broke the law, and I know I should be punished for
9   it, so I'm accepting responsibility, but I've been gone from my
10  family for a while.  I learned to change.  It's really helping
11  me out.  I just ask the Court to take it into consideration.
12         **THE COURT:**  One of the things I never understand,
13  Mr. Harris is -- I'll use this case as an example.  So
14  you're -- let's see, paragraph 71 -- arrested in 2013,
15  convicted in 2016, felony possession of a marijuana.  You knew
16  that you could get six to 17 months in prison during this
17  period of unsupervised probation if you're caught engaging in
18  these transactions, and yet you continued to do business as
19  usual.
20         So when you stand up and say I've learned my lesson
21  because you've had some time to think about it, the first thing
22  that comes to my mind is what is different about here that --
23  from 2016?  You knew the consequences of what you did, and you
24  knew that it could land you somewhere unfavorable, even on a
25  probation violation.  So why -- what's changed now to make now

Sentencing - April 12, 2019

1  different?

2      **THE DEFENDANT:**  Well, actually I started my own

3  businesses back after I got put on probation in 2016.  My

4  businesses didn't go well.  I kept running into a couple

5  roadblocks, a couple problems from stuff I just -- there's no

6  point speaking of because it really hasn't made a difference

7  for me, but I ended up turning, going back, but it had been a

8  while before I done what I was found guilty of doing.  It was

9  just something I just bounced back to.  It wasn't the right

10  thing.  It's just something that happened to me.

11      **THE COURT:**  All right.  You can have a seat.

12  Mr. Zellmer and Mr. Galyon, when I look at this, in terms of

13  fashioning a sentence, I think there's very serious conduct

14  here.  Prior convictions for felony offenses have not deterred.

15  Absent the stipulation to the 100 to 400 kilograms converted

16  drug weight, as you know from the prior calculation in the

17  presentence report, the defendant could very easily have been

18  facing a sentence of 135 months or more.  The stipulation has

19  resulted in a reduction to this 70- to 87-month guideline

20  range.  What I consider to be a relatively favorable

21  calculation with respect to acceptance of responsibility has

22  kept it in that range.

23      And so just thinking out loud for a moment, in case

24  you want to respond, I think, given the grounds that might

25  exist absent the stipulation for a much higher guideline

calculation, and given the grounds that I think exist, such as
concerns over acceptance of responsibility, some what I
perceive to be minimization here with respect to the actual
criminal conduct that might otherwise support a variance, I
ultimately conclude that with respect to a guideline range
sentence, that a sentence of 84 months is sufficient but not
greater than necessary, given how much benefit Mr. Harris has
received on various issues up to this point.

I think, as I indicated earlier with respect to
the -- anyway, that's where, at least at this point, I land;
but, admittedly, a lot of that is because I think there's an
argument that this case is much more serious, or could be
analyzed to be much more serious than that 84 months might
reflect, and you might -- you may disagree with me on those
factors.  Anything you want to be heard on, Mr. Zellmer?

**MR. ZELLMER:**  Your Honor, I think Your Honor has
heard all of my arguments.  I don't -- I can't imagine that me
simply repeating them --

**THE COURT:**  I think the main thing is in terms of the
stipulation, I've accepted the stipulation.  I think there is
grounds to find that there was much more controlled substance
involved than is reflected in the stipulation, which is moving
me up toward the higher end of the guideline range.  You may
disagree with that, or you may feel like that's unfair; if you
do, tell me now.

Case 1:18-cr-00249-WO   Document 149   Filed 04/29/20   Page 20 of 27

1         **MR. ZELLMER:** Well, 84 is in the middle of the

2 guideline range, so it would be, I think, difficult for me to

3 argue that it is unfair.

4         **THE COURT:** Okay. Mr. Galyon, do you want to be

5 heard on that?

6         **MR. GALYON:** No, Your Honor.

7         **THE COURT:** All right. Then you may remain seated

8 for just a moment, Mr. Harris.

9         In this particular case, as I indicated, taking into

10 consideration the arguments of counsel, the advisory guideline

11 calculation, and the factors listed under 18 USC

12 Section 3553(a), I find that a sentence of 84 months, followed

13 by six years of supervised release, is sufficient but not

14 greater than necessary. At least in this case of particular

15 significance to me are:

16         No. 1, in terms of the nature and circumstances of

17 the offense -- I think in fairness, I will say this: I don't

18 find the gun possession to significantly aggravate this case.

19 I think the plus two is properly applied, but there's no

20 evidence that I've seen that Mr. Harris actively deployed that

21 gun, or actively carried that gun with him while engaged in

22 transactions. Maybe he did, maybe he didn't, but certainly

23 there's no evidence in the case to support a finding such as

24 that.

25         I do think, in light of the information contained in

the presentence report, there are a number of factors that

significantly aggravate the nature and circumstances of the

offense.  One, I think in terms of quantities of controlled

substances, I think this -- the amount calculated is very

generous to Mr. Harris in terms of not including what could be

other much larger amounts.

No. 2, although there's no adjustment for it, at

least in the Court's opinion, any time drug distribution

extends from cars and houses to other properties that are

controlled by groups of individuals who are distributing

controlled substances, here specifically I'm addressing the New

York Avenue property, which from the facts set forth in the

presentence report appears to having been a territory, in large

part, used by Mr. Harris and others involved with Mr. Harris

from which to distribute controlled substances, that that type

of activity significantly aggravates the nature and

circumstances of the offense.

Finally, with respect to the history and

characteristics of the defendant, this is -- I think it's three

prior felony convictions were insufficient to deter Mr. Harris

from engaging in this conduct.

As I say those factors out loud, and give

consideration, I do think there is likely ample grounds for a

variance in the case, perhaps substantial, but I'm going to

stay within the guideline range at 84 months, in light of the

letters and support that Mr. Harris has within the community,
and particularly in light of my respect for his parents and the
things that they have accomplished, which I do agree with
Mr. Zellmer on.  I think the nature of that family and the work
of the parents suggest that Mr. Harris will have the support
that he needs within the family and the community upon
completion of this sentence, to suggest that a variance is not
either necessary or appropriate in this case.

So I will impose that sentence.  Six years of
supervised release on the terms and conditions set forth in the
presentence report.  Does either side have anything further
they wish to address before I impose that sentence?

**MR. GALYON:**  Your Honor, the only thing I would have
is I would ask that when the Court is announcing the sentence
that the Court also order that forfeiture.

**THE COURT:**  All right.  If you will stand, please,
Mr. Harris.

Case No. 1:18CR249-2, United States versus Lee Marvin
Harris, as to Count Seven, it is hereby ordered that the
defendant is committed to the custody of the Bureau of Prisons
for a term of 84 months followed by six years of supervised
release.

A special assessment of $100 is mandatory and is
hereby imposed.  A fine is waived because of defendant's
inability to pay, and restitution is not imposed in this case.

Sentencing - April 12, 2019

1    The Court recommends to the Bureau of Prisons that

2 the defendant be designated to a facility where he may

3 participate in an intensive substance abuse treatment program

4 and to a facility where he may participate in occupational and

5 vocational training to include culinary arts as indicated in

6 the presentence report.

7    As part of this judgment, the Court hereby orders the

8 forfeiture -- what was that a Taurus firearm?

9    **MR. GALYON:**  Springfield, Your Honor.

10    **THE COURT:**  Springfield .40 caliber firearm as

11 described in the plea agreement.

12    During the period of supervised release, it is

13 ordered that the defendant shall abide by the mandatory and

14 standard conditions of supervised release.  The following

15 special conditions are imposed:

16    One, the defendant shall submit to substance abuse

17 testing at any time as directed by the probation officer.  The

18 defendant shall cooperatively participate in a substance abuse

19 treatment program, which may include drug testing and inpatient

20 or residential treatment, and pay for those treatment services

21 as directed by the probation officer.  During the course of any

22 treatment, the defendant shall abstain from the use of

23 alcoholic beverages.

24    Two, the defendant shall provide any requested

25 financial information to the probation officer.

Case 1:18-cr-00249-WO   Document 149   Filed 04/29/20   Page 24 of 27

1          Three, the defendant shall not associate with or be

2  in the company of any Dope Boys Clique, gang members, or

3  security threat group member.  The defendant shall not frequent

4  any locations where gangs or security threat groups congregate

5  or meet.  The defendant shall not wear, display, use or possess

6  any clothing or accessories which have any gang or security

7  threat group significance.

8          Four, the defendant shall submit his person,

9  residence, office, vehicle, or any property under his control

10 to a warrantless search.  Such search shall be conducted by a

11 United States probation officer at a reasonable time and in a

12 reasonable manner based upon reasonable suspicion of contraband

13 or evidence of a violation of a condition of release.  Failure

14 to submit to such a search may be grounds for revocation.  The

15 defendant shall warn any residents that the premises may be

16 subject to searches.

17         And, five, the defendant shall support his dependents

18 and/or comply with any order to make child support payments or

19 to make payments to support a person caring for a child.

20         Mr. Harris, in this case, you have waived your right

21 to appeal, except for those four grounds reserved in the plea

22 agreement itself.  Mr. Zellmer will be responsible for advising

23 you with respect to your right to appeal and your waiver of

24 that right, and will file a notice of appeal if you instruct

25 him to do so.

Case 1:18-cr-00249-WO   Document 149   Filed 04/29/20   Page 25 of 27

1          Anything further, Mr. Zellmer?

2               **MR. ZELLMER:**  No, Your Honor.

3               **THE COURT:**  Mr. Galyon?

4               **MR. GALYON:**  No, Your Honor.

5               **THE COURT:**  All right.  We'll be in recess until

6   1:00.

7               (At 11:03 a.m., proceedings concluded.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Sentencing - April 12, 2019

* * * * *

C E R T I F I C A T E

I certify that the foregoing is a correct transcript
from the record of proceedings in the above-entitled
matter.


Date: 02/19/2020      Joseph B. Armstrong, FCRR
                      United States Court Reporter
                      324 W. Market Street
                      Greensboro, NC  27401

Sentencing - April 12, 2019